[Civ. No. 20722.   Second Dist., Div. One.   July 5, 1955.]

MURIEL S. LINEHAN, Respondent, v. MARGARET SCHUYLER LINEHAN, Appellant.

Margaret Schuyler Linehan, in pro. per., for Appellant.

George E. Lindelof, Jr., and Herbert C. Meade for Respondent.

WHITE, P. J.—In a complaint containing 10 causes of action plaintiff charged defendant with libel in Counts I, II and III; Counts IV, V, VI, VII, VIII and IX charged slander, while Count X alleged invasion of plaintiff's right to privacy. Following a trial before the court without a jury, judgment was rendered in favor of plaintiff on Counts IV, V, VI and IX (slander), and Count X (invasion of privacy). Damages were assessed at $1,500 compensatory and $2,500 as punitive. Motion for a new trial was denied. Defendant prosecutes this appeal from the judgment.

After all briefs were on file and at the time the cause was called for oral argument, respondent presented a motion to dismiss the appeal upon the ground that ". . . no valid ground of appeal is presented by Appellant's Opening Brief and that said appeal is made frivolously and for the purpose of delay." Said motion was submitted for decision. Upon consideration of the record we have concluded to deny the motion to dismiss and to determine the appeal on the merits.

The following we regard as a fair epitome of the factual background surrounding this litigation as reflected by the record. At all times embraced within the pleadings defendant was a former wife of one Robert E. Linehan, having obtained a judgment of divorce from him on October 23, 1946, in the Second Judicial District of the State of Nevada, County of Washoe, and in which action she was the plaintiff and testified. Prior to the events about to be narrated, appellant

was never remarried to Linehan. Respondent in this action married Linehan April 15, 1950, at Las Vegas, Nevada. There was evidence that following this marriage between respondent and Linehan, appellant held herself out publicly as the only lawful wife of Linehan. The record below discloses that pursuant to a design on her part, and over a period of some two years, appellant made repeated personal and telephone calls to the home of respondent and respondent's relatives, and stated to third persons that respondent was not the lawful wife of Linehan but was cohabiting with him knowing him to be the husband of appellant. The latter repeatedly engaged in public episodes of name-calling and vilification of respondent in connection with the latter's marriage. Appellant followed respondent from Whittier, California, to Boston, Massachusetts, to Montreal, Canada, in each of which places respondent then resided, and repeated the foregoing charges to third persons. Appellant wrote relatives of respondent, repeating the above charges and accusing respondent of poisoning Linehan. In a divorce proceeding between respondent and Linehan, appellant appeared in the courtroom and repeated the above charges and characterized respondent's marriage as "bigamous." Appellant stated to another relative of respondent, and to a friend, that respondent was consorting with Linehan illegally and sinfully. In the presence of various persons, appellant stated respondent was a narcotics addict.

Until the time of trial of this action the divorce secured by appellant in 1946 had not been modified or set aside and during such times was in full force and effect. Respondent secured an interlocutory decree of divorce from Linehan in the Superior Court of Los Angeles County on February 27, 1952. Thereafter, on June 28, 1952, appellant herein entered into a remarriage with Linehan in Storey County, Nevada.

There was evidence that appellant asserted she was living intermittently with Linehan at various times following the foregoing 1946 Nevada divorce, and that she prepared and widely distributed documentary material purporting to show an intimate association with Linehan during the period he was married to respondent. The record, however, is barren of any evidence to support appellant's claim that she was legally married to Linehan at any time subsequent to October 23, 1946, and prior to the date of trial of this action.

The court made comprehensive and specific findings that

respondent's marriage to Linehan was legal and lawful, and that appellant herein herself instituted the above action for divorce against Linehan, was personally present in the courtroom at the time the decree of divorce was granted and testified in the case. That, "It is true that continuously since the said April 15, 1950, the defendant has falsely and knowingly represented herself and held herself out to the whole world, orally and in writing, as the lawful wife of the said Linehan." That appellant herein spoke to other persons of and concerning respondent substantially as follows, " 'Muriel is not Robert Linehan's legal wife. I am his only legal wife. Muriel was warned not to marry Bob, but instead she went through a fake marriage and now pretends to be Mrs. Linehan. She is living with Bob illegally and sinfully.' It is true that the aforesaid words of defendant were wholly false and were uttered by defendant with full knowledge of their falsity, and were uttered and published by the defendant maliciously." That appellant made other false statements, such as, "That woman (meaning respondent herein) is consorting illegally with my husband, and she has been warned of it repeatedly." Also the court found that appellant uttered statements of and concerning respondent such as, "Muriel has no right pretending to be Mrs. Linehan and keeping Bob (meaning Robert E. Linehan) here against his will. She is doing a shocking and immoral thing."

Upon competent evidence the court found that, "It is true that on or about the 15th day of April, 1950, the defendant conceived and formulated a design, the object of which was to harrass the plaintiff by representing to the world, orally and in writing, that plaintiff was not the lawful wife of the said Robert E. Linehan but was associating with the said Linehan immorally and sinfully. It is true that in execution of the said design, defendant made repeated personal and telephone calls to the home of plaintiff and plaintiff's relatives, and stated to plaintiff, to plaintiff's mother, brother and sister-in-law, and to a friend of plaintiff's, and in the presence and hearing of other persons, that plaintiff was not the lawful wife of the said Linehan but was associating with him knowing him to be the husband of defendant, and was living with him in a sinful and unlawful state. It is true that in execution of the aforesaid design, the defendant followed plaintiff from plaintiff's home in Whittier, California, to an apartment plaintiff maintained in Boston, Massachusetts, and later to a relative's home in Montreal, Canada, and that in

each of the said places she made substantially the same statements of and concerning plaintiff. It is true that many of the aforesaid statements were made by defendant in a loud and boisterous tone of voice, and that defendant conducted herself loudly and boisterously. It is true that the defendant visited the police station in the city of Whittier, California, and there made certain allegations and complaints to authorities of and concerning plaintiff, and that the defendant visited the police station in the city of Boston, Massachusetts, and there made certain statements and complaints of and concerning the plaintiff. It is true that the defendant caused to be prepared certain writings and photographic and documentary materials in purported support of her aforesaid statements of and concerning plaintiff. It is true that the aforesaid words and conduct of defendant were uttered and performed pursuant to the aforesaid design to harrass plaintiff. It is true that the aforesaid words and conduct of defendant were wholly false and were uttered and performed by defendant with full knowledge of their falsity, and were uttered and performed maliciously. It is true that the aforesaid course of conduct of defendant constituted a willful invasion of plaintiff's right of privacy, and that as a direct result of the said course of conduct the plaintiff suffered public humiliation and embarrassment.''

Throughout the trial and on this appeal appellant advances the claim that she was repeatedly informed by Linehan that his marriage to respondent was invalid. That any and all of her acts, statements, utterances and writings were made ''in the best of faith and upon the invitation of respondent and her mother, who constantly invited appellant to confer with them concerning the situation created by the association of Robert E. Linehan, appellant, respondent and her mother.'' As stated in appellant's brief, ''Appellant takes the position, as brief as it may be, that any of the acts, statements, communications, or actions done by her as related by testimony in the transcript of the lower court *were not done with malicious intent,* but were done in duty and good faith and for the purpose of clarification of a confused association of the individuals concerned, and such acts were brought about and induced by the utterances of the respondent, her mother and Robert E. Linehan.'' (Emphasis added.)

We are confronted with an appeal wherein the appellant mistakes the powers and limitations of a reviewing tribunal. Our function is not to retry the cause and we are not

authorized to review evidence except where, on its face, it may justly be held that it is insufficient to support the ultimate issue involved, in which case it is not a review of a question of fact but purely one of law. Reviewing judges are, obviously, in no position to determine the credit which should be accorded to witnesses or weigh their testimony. The trier of facts is the exclusive judge of the credibility of witnesses (Code Civ. Proc., § 1847), and is the judge of the effect and value of evidence addressed to him, except in those instances where it is declared by law that it shall be conclusive proof of the fact to which it relates (Code Civ. Proc., § 2061). No questions of law are presented on this appeal. It offers only questions of fact because, if the statements allegedly made by appellant were in fact uttered and published by her in the manner and form, and under the circumstances shown by testimony in the record, there can be no question but that they were actionable. ▪ Under well established and elementary principles of law, where an appeal is taken, every intendment is to be indulged in which tends to support the judgment, and every reasonable inference that may be drawn from the facts which tend to support the findings must be accepted (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689]). ▪ The construction of the evidence is to be in support of the findings (*Patten & Davies Lbr. Co.* v. *McConville,* 219 Cal. 161, 164 [25 P.2d 429]), with all conflicts resolved in favor of the respondent. ▪ And where as here, the contention is advanced that the evidence is not sufficient to sustain the determination arrived at by the trial court, the burden rests on the appellant ''to demonstrate that there is no substantial evidence to support the challenged findings'' (*Nichols* v. *Mitchell,* 32 Cal.2d 598, 600 [197 P.2d 550]). It is only when the appellate court can say as a matter of law that there is such a lack of substantial facts in the record upon which the trial court could have based any reasonable inference in support of its findings, that a reversal may be ordered. The scope of appellate review is thus stated in *Crawford* v. *Southern Pac. Co.,* 3 Cal.2d 427, 429 [45 P.2d 183]:

''It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences

can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. (Citing cases.)''

The motion to dismiss the appeal is denied. The judgment is affirmed.

Doran, J., and Drapeau, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 1, 1955.